IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| EDWARD W. HARTMAN, | ) | |
| Plaintiff, | ) | Civil Action No. 5:16-cv-00034 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | By:   Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

Plaintiff Edward W. Hartman asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 6. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that the Commissioner's final decision is supported by substantial evidence and must be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

1

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The applicant bears the

burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

II. Procedural History

Hartman filed for DIB on November 16, 2010, and for SSI on January 18, 2011. Administrative Record ("R.") 18, ECF No. 10. In June 2008, Hartman crashed his All-Terrain Vehicle ("ATV") and suffered subarachnoid hemorrhage because of a ruptured aneurysm, which the attending physician termed "a slight brain injury." R. 377. After surgery to clip the ruptured aneurysm, Hartman returned to work at a turkey farm until May 19, 2010. R. 234, 297. Hartman alleges that he has been disabled since that time because of the subarachnoid hemorrhage, back and hip pain, chronic headaches, and short-term memory and anger issues. *See* R. 178, 182, 230, 234. The Commissioner twice rejected Hartman's applications in 2011. R. 18.

On June 13, 2012, Hartman appeared with counsel at a hearing before ALJ Drew Swank. R. 34–62. That July, ALJ Swank issued a written opinion finding that Hartman retained the residual functional capacity ("RFC")[1] to perform "medium" exertion[2] work so long as he was "further limited to simple, unskilled work" and avoided "exposure to concentrated hazards." R. 22. Based on this RFC, ALJ Swank concluded that Hartman was not disabled because he could return to his old job as "a turkey farm helper" or, alternatively, he could perform a wide range of "unskilled medium" occupations available in the national economy. R. 27–28.

On appeal to this Court, the undersigned Magistrate Judge recommended that the Commissioner's final decision be reversed because the restriction to "simple, unskilled work" in

---

[1] A claimant's RFC represents "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" despite the combined limiting effects of his or her medically determinable impairments. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945.

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

3

the RFC did not necessarily reflect ALJ Swank's findings that Hartman had "moderate" limitations maintaining concentration, persistence, and pace, and could concentrate for two-hour segments throughout an eight-hour workday. *See Hartman v. Colvin*, 5:13cv109, 2015 WL 877360, at *7–8 (W.D. Va. Jan. 15, 2015). The District Court adopted that recommendation and remanded Hartman's case for further administrative proceedings. *Id.* at *1. On remand, the Appeals Council vacated ALJ Swank's decision and instructed a different ALJ to hold a hearing and issue a new decision based on all the evidence in the current record. *See* R. 619, 732–33.

On January 6, 2016, Hartman appeared with counsel for a hearing before ALJ R. Neely Owen. *See* R. 645–85. Hartman, his longtime girlfriend, a vocational expert ("VE"), and an impartial clinical psychologist all testified at the hearing. *See* R. 619, 645–85. ALJ Owen issued an unfavorable decision on March 3, 2016. R. 619–37. He found that Hartman had "the following severe impairments: a central nervous system disorder, a major depressive disorder, mild cognitive disorder, and a pain disorder."[3] R. 621. None of these impairments met or medically equaled one of the presumptively disabling impairments listed in the Act's regulations. R. 622–23.

The ALJ next evaluated Hartman's RFC based on all of his medically determinable impairments. *See* R. 624–35. He determined that Hartman could physically perform "medium work," but must be limited to "simple, repetitive, routine, one or two-step tasks in a low stress environment involving a slow pace with no quotas . . . and minimal public contact." R. 624. The ALJ noted that this RFC ruled out Hartman's return to all of his past relevant work, including the

---

[3] ALJ Owen deemed all other impairments alleged in the record, including migraine headaches, carpal tunnel syndrome, spinal impairments, and a left ankle and foot impairment to be non-severe. R. 622. He explained that "they did not exist for a continuous period of twelve months, were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations." *Id.* Hartman does not specifically challenge these findings. *See* Pl.'s Br. 2–6, ECF No. 15.

4

job on the turkey farm. R. 635. Finally, relying on the VE's testimony, the ALJ concluded that Hartman had not been disabled after May 19, 2010, because he still could perform several "medium" and "sedentary"[4] occupations that were available nationally and in Virginia, such as hospital cleaner, assembler, and stacker or packer. R. 636; *see* R. 681–83. The Appeals Council denied Hartman's request to review that decision, R. 616–18, and this appeal followed.

III. Discussion

On appeal, Hartman asks the Court to review whether "the ALJ's conclusion adequately consider[s] Mr. Hartman's pain." Pl.'s Br. 2. *See generally id.* at 2–6. His argument focuses on ALJ Owen's finding that, although Hartman's "medically determinable impairments could reasonably be expected to cause" his alleged pain and other symptoms, Hartman's "statements, and those of his girlfriend and former supervisor, concerning the intensity, persistence and limiting effects" of those alleged symptoms were "not entirely credible in light of the longitudinal medical record as a whole," R. 627; *see* Pl.'s Br. 3–5; R. 652–58, 663–67, 683–84. In particular, Hartman objects that the ALJ's adverse credibility determination is not supported by substantial evidence because he "disregard[ed] treating physicians' documentation of pain and exacerbating psychological factors," Pl.'s Br. 5, and erroneously found that Hartman's "pain naturally arising from his disorders" was "adequately controlled by medication and treatment so long as he properly follow[ed] the regimen and protocol of care provided," *id.* at 4; *see* R. 627–37. He asserts that he is entitled to disability benefits because "his testimony as to his limitations arising from pain should be found fully credible." Pl.'s Br. 5.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). A person who can perform "medium" work can also perform "sedentary" work. *See id.* §§ 404.1567(c), 416.967(c).

5

Hartman does not identify the testimony that he says ALJ Owen should have accepted as true. *See id.* His brief also largely fails to describe the kind and degree of "pain" that allegedly prevents him from working, and it does not identify any functional "limitations arising from pain" that the ALJ might have overlooked in reaching the opposite conclusion. *See id.* at 3–5; *Hartman*, 2015 WL 877360, at *7 ("Although this Court reviews the RFC determination for substantial evidence, the claimant bears the burden of showing that an omitted limitation should have been included."). ALJ Owen indicated that Hartman's testimony "as to the limitations he has by reason of his impairments" focused on "the level of pain and discomfort" attributable to his chronic headaches and ankle impairment, as well as the degree to which that pain limited Hartman's mental and physical capacities to work on a sustained basis. R. 683–84 (mentioning Hartman's "pain and discomfort" in the context of asking the VE about maintaining workplace attendance, stamina, and concentration, persistence, or pace, on a normal work schedule); *see* R. 633, 652–53, 656–58, 665. Accordingly, broadly construing his argument, Hartman suggests that the ALJ's RFC finding does not reflect his testimony about his physical "pain and exacerbating psychological factors." *See* Pl.'s Br. 3–5.

A person's RFC represents his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" despite his medical impairments. SSR 96-8p, 1996 WL 374184, at *2 (emphasis omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945. It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam), and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the claimant's credible complaints, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015). In discharging his duty to provide a narrative assessment

6

of the claimant's RFC, the ALJ must make specific findings about the impact of the claimant's medical impairments and credible, related symptoms (such as pain) on his ability to work on a sustained basis in an ordinary workplace setting. *See Mascio*, 780 F.3d at 636; *accord Monroe v. Colvin*, 826 F.3d 176, 187–88 (4th Cir. 2016).

The ALJ cannot reject the claimant's subjective description of his pain "solely because the available objective medical evidence does not substantiate" that description. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also Hines*, 453 F.3d at 563–64. Rather, the ALJ must consider "all the available evidence in the record" in evaluating the credibility of a claimant's allegations that he is disabled by pain caused by a medical impairment.[5] 20 C.F.R. §§ 404.1529(c), 416.929(c). Ultimately, the ALJ's specific reasons for the weight assigned to the claimant's subjective complaints need only be legally adequate and supported by substantial evidence in the record. *See Mascio*, 780 F.3d at 639; *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (citing *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997)).

ALJ Owen's RFC finding limits Hartman to "medium work" and "simple, repetitive, routine, one or two-step tasks in a low stress environment involving a slow pace with no quotas . . . and minimal public contact." R. 624. At the beginning of his RFC analysis, the ALJ reviewed statements made by Hartman, as well as his longtime girlfriend and his former supervisor at the

---

[5] The Social Security Administration now cautions that this "credibility" analysis should be limited to matters concerning the claimant's work-related symptoms and should "not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016). Statements that are internally inconsistent or that are inconsistent with the other evidence of record, however, may lead the ALJ to "determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* at *7.

7

turkey farm, describing Hartman's medical impairments and related functional limitations.[6] *See* R. 625–27. Most of those statements focused on Hartman's cognitive deficits and difficulty regulating his mood and behavior since the ATV accident. R. 625–27; *see* R. 297, 654–68. However, the ALJ specifically cited Hartman's and his girlfriend's January 2016 testimony that Hartman had "severe headaches," that he "could not walk" because of his "bad feet and ankles," that he "end[s] up sitting around because he hurt[s] too badly" after mowing the lawn, that he "could not pay attention to a half hour television show because he was unable to sit still," and that "nothing" has helped his pain. R. 625–26; *see* R. 652–53, 656–58, 664, 666–67. ALJ Owen's written decision also includes a thorough and accurate summary of the treatment notes and other medical evidence bearing on Hartman's allegation that he experiences debilitating headaches and musculoskeletal pain. R. 627–35.

The ALJ gave two reasons for finding that Hartman's statements describing his pain and related functional limitations were "not entirely credible in light of the longitudinal medical record as a whole." R. 627; *see* R. 627–35. First, he found that "repeated physical examinations ha[d] failed to reveal significant ongoing psychological signs or neurologic deficits or decreased strength or range of motion, as would be expected" given the "significant functional limitations" that Hartman and his girlfriend had alleged. R. 634; *see* R. 627–34 (summarizing treatment notes and findings on neurophysical examinations throughout the relevant period). This finding is supported by substantial evidence in the record. For example, although Hartman often endorsed nondescript "pain" or "tenderness" on physical examinations, his doctors repeatedly observed

---

[6] In May 2012, Hartman's former supervisor told Hartman's attorney that he "made accommodations for [Hartman's] condition" after the aneurysm surgery but that he terminated Hartman's employment in May 2010 because his "ability declined" and "he just wasn't able to do much anymore." R. 297; *see* R. 626. The only specific work-related accommodation mentioned in this statement is that the former supervisor "stayed with [Hartman] on the job for several days because he required observation due to the danger of spasms." R. 297.

8

that he possessed full strength in both extremities, walked with a "normal" gait, and only occasionally exhibited "limited" or "decreased" range of motion in his back and left ankle. *See, e.g.*, R. 415–16, 525–27, 531, 540–51, 879, 904, 907, 921, 1022, 1037, 1041; *accord* R. 890 (treating physician's note that there was "no clinical or laboratory evidence of an inflammatory myositis or arthritis" in October 2012, and that a September 2012 myelogram of Hartman's lumbar spine showed only "mild diffuse disc bulge at L5-S1 with mild to moderate bilateral neuroforaminal stenosis"), 897–98 (March 2013 CT scan of Hartman's pelvis showing "mild degenerative" changes in the lumbar spine and no evidence of sacroiliitis). Both of Hartman's neurologists also opined that Hartman's chronic headaches likely are attributable more to muscle tension and underlying anxiety than to fluid on the brain or other acute intracranial abnormality. *See* R. 879, 896, 989–93, 1037, 1050.

A factor, though not itself determinative, in the credibility assessment is whether the objective evidence shows an impairment that could cause the severity of the pain. A claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." *Craig*, 76 F.3d at 595. The ALJ reached a different conclusion than Hartman about the severity of his chronic headaches and musculoskeletal pain, but the ALJ nonetheless acknowledged that Hartman's complaints of pain appeared throughout the medical record and, in his RFC assessment, accounted for them to a degree by limiting Hartman's mental and physical activities. *See Hays v. Sullivan*, 907 F.2d 1453, 1457–58 (4th Cir. 1999) ("An individual does not have to be pain-free in order to be found 'not disabled.'").

Second, the ALJ found that Hartman's treatment since May 2010 had "been routine, conservative, and unremarkable" because "no surgery other than ankle arthroscopy had been recommended." R. 634–35. While Hartman's podiatrist actually did recommend a second ankle surgery in November 2015, *see* R. 1042, the ALJ's finding that Hartman's treatment had been "routine, conservative, and unremarkable" overall is nonetheless supported by substantial evidence in the record. *See* R. 78 (state-agency physician noting that Hartman's treatment before April 2011 had "been routine and conservative"), 629–35 (summarizing, accurately, the mixed results from Hartman's subsequent treatment with pain medications, muscle relaxants, steroid injections, nerve blocks, and physical therapy). In October 2012, for example, one of Hartman's physicians referred him to Ward Gypson, M.D., for "conservative management of back pain." R. 889. Dr. Gypson prescribed muscle relaxants and steroid injections, which Hartman later said were "helpful" and reduced his joint pain for at least some time. R. 1021, 1023. In June 2013, a psychologist at the University of Virginia's Pain Management Center recommended that Hartman practice "self-regulation skills," such as meditation and activity pacing, to help cope with his chronic headaches and generalized pain. R. 1007. In October 2015, Hartman told his neurologist Michael Valente, D.O., that hydrocodone "seems to help his intense headaches." R. 1049. The ALJ did not express doubt that Hartman experienced chronic headaches and musculoskeletal pain, but he did question the severity of those symptoms based on the treatment Hartman received. R. 634. Thus, although Hartman's treatment history certainly depicts a person seeking relief for his chronic pain, the nature of that treatment and the partial relief afforded by conservative measures provide adequate grounds for the ALJ to question the severity of Hartman's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Gregory v. Colvin*, No. 4:15cv5, 2016 WL 3072202, at *5 (W.D. Va. May 6, 2016) ("It was reasonable for the ALJ to

characterize [Plaintiff's] course of treatment, consisting of pain medication, physical therapy, and steroid injections, as 'conservative.'"), *adopted by* 2016 WL 3077935 (W.D. Va. May 31, 2016).

Considering the objective medical evidence and Hartman's course of treatment, the ALJ could reasonably question the severity and functionally limiting effects of Hartman's symptoms related to pain. This case does not present the exceptional circumstance where an ALJ's credibility determination is based on unreasonable, contradictory, or inadequate findings. *See Bishop*, 583 F. App'x at 68 (citing *Eldeco, Inc.*, 132 F.3d at 1011). Moreover, contrary to Hartman's assertion, there is no indication that ALJ Owen "disregard[ed] treating physicians' documentation of pain and exacerbating psychological factors" when evaluating Hartman's or his girlfriend's subjective statements. Pl.'s Br. 5. While several of Hartman's doctors have identified a psychosomatic element to his physical pain, the ALJ specifically discussed those treatment and exam notes in his summary of the longitudinal medical evidence. *See* R. 625–33 (citing R. 508, 879–80, 1007, 1037–38, 1049–50). Hartman does not "point to any specific piece of evidence" not considered by the ALJ that might have changed his adverse credibility determination or his conclusion that Hartman's medical impairments are not disabling. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 866 (4th Cir. 2014) (emphasis omitted). Accordingly, I find that substantial evidence supports the ALJ's credibility determination.

I also find that that ALJ's RFC assessment is supported by substantial evidence in the record, including medical opinions from a state-agency reviewing physician and an impartial clinical psychologist, Hartman's consistently normal physical and neurological exams throughout the relevant period, and Hartman's repeated statements to doctors that his headaches and other pain usually did not interfere with his daily activities. *See* R. 91–92, 320, 536, 546,

11

672–74, 677–78, 1006. In particular, I find that restricting Hartman to "simple, repetitive, routine, one or two-step tasks in a low stress environment involving a slow pace with no quotas . . . and minimal public contact," R. 624, adequately accommodates Hartman's well-documented complaints that "stress" and noisy children tended to aggravate the frequency or severity of his headaches. *See, e.g.*, R. 1007, 1036–37, 1049. Hartman does not argue otherwise. Pl.'s Br. 3–5.

The ALJ's reliance on the VE's testimony in response to a hypothetical question reflecting his RFC determination, R. 636, was also proper. *See Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006). The VE testified that a person with Hartman's vocational profile and RFC could perform certain "medium" and "sedentary" occupations, such as hospital cleaner, assembler, and stacker or packer. *See* R. 681–82. Hartman does not object to the VE's testimony or to the ALJ's finding that these jobs exist in significant numbers nationally or in Virginia. Accordingly, I find that the Commissioner's final decision is consistent with the law and supported by substantial evidence in the current record. *See Walls v. Barnhart*, 296 F.3d 287, 292 (4th Cir. 2002) (holding that a VE's reliable testimony provides substantial evidence to support the Commissioner's final decision).

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence supports the Commissioner's final decision. Accordingly, the Court will **GRANT** the Commissioner's motion for summary judgment, ECF No. 16, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket. A separate order will enter.

The Clerk shall send certified copies of this Memorandum Opinion to counsel of record.

ENTER: September 29, 2017

*[signature: Joel C. Hoppe]*

Joel C. Hoppe
United States Magistrate Judge